UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------------------------X
Randy McNair,
            Plaintiff,
      -against-                                                         COMPLAINT
                                                                                AND JURY DEMAND
THE CITY OF NEW YORK, NEW YORK CITY POLICE OFFICERS:     18-cv-2342

GWENDOLYN BOOKER, RICHARD GAMBARDELLI, AND OFFICERS
JOHN DOE # 1 through approximately # 10, the names being fictitious and
presently unknown, in their individual and official capacities as employees of the
City of New York Police Department,
            Defendants.
-------------------------------------------------------------------------------------------------X

      The Plaintiff, Randy McNair, by his attorney, Gregory Zenon, of The Law Office of Gregory Zenon, alleges the following, upon information and belief for this Complaint:

### NATURE OF THE ACTION / PRELIMINARY STATEMENT

      1.    This is a civil rights action for money damages brought pursuant to 42 U.S.C. §§ 1981, 1983, and 1988, the Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution, Article I, Sections 6, 11, and 12 of the New York State Constitution, and the common law of the State of New York, against the City of New York, New York City Police Department, and NYPD Police Officers Gwendolyn Booker, Richard Gambardelli and Officers John Doe # 1-10, police officers of the City of New York, in their individual and official capacities. Plaintiff seeks compensatory and punitive damages, affirmative and equitable relief, an award of attorneys' fees and costs, and such other relief as this Court deems equitable and just.

### JURISDICTION

      2.    This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343 (3) and (4). Plaintiff also asserts jurisdiction over the City of New York under 28 U.S.C. §1331 and §1367. Plaintiff request this Court exercise pendent jurisdiction over those state law claims arising out of the same common nucleus of operative facts as Plaintiff' federal claims.

### NOTICE OF CLAIM

      3.    A notice of claim was filed with the City of New York within the relevant statutory period; 50-h hearings conducted; more than 30 days have elapsed since such filing; the City has inadequately offered to settle Plaintiff's state law claims.

### VENUE

      4.    Under 28 U.S.C. § 1391(b), venue is proper in the Southern District of New York because this is a judicial district in which the events or omissions giving rise to the claim occurred, and because defendant officers were assigned to a Precinct in New York County, New York, within the confines of the Southern District of New York.

### PARTIES

      5.    Plaintiff at all times relevant hereto resided in the City and State of New York.

6. At all times hereinafter mentioned, and upon information and belief, defendant, CITY OF NEW YORK, was at all times relevant hereto, a municipal corporation duly organized and existing pursuant to the laws, statutes and charters of the State of New York.

7. THE NEW YORK CITY POLICE DEPARTMENT was at all times relevant hereto, an agency of the defendant THE CITY OF NEW YORK.

8. That at all times hereinafter mentioned, and on information and belief, defendant Police Officers were at all times relevant hereto, employees of defendant CITY OF NEW YORK, as police officers employed by THE NEW YORK CITY POLICE DEPARTMENT.

9. At all times mentioned herein, defendants were acting under color of state and local law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

10. That at all times hereinafter mentioned, and upon information and belief, the individual defendants are named herein both personally and in their official representative capacities as police officers employed by Defendant CITY OF NEW YORK. And that each and all of the acts of the individual defendants alleged herein were done by the individual defendants and each of them under cover and pretense of the statutes and laws of the State of New York, and under and by virtue of their authority as police officers and employees of Defendant CITY OF NEW YORK.

11. That as a result of the foregoing, Defendant CITY OF NEW YORK, is liable for the individual defendant's acts pursuant to the doctrine of "respondeat superior."

## FACTUAL ALLEGATIONS

12. At all relevant times, Randy McNair was a 22-year-old young man with no criminal record, living at home with his family and working full-time.

13. At all relevant times, Defendant Booker was the case detective for and arresting officer of plaintiff and Defendant Gambardelli was personally involved in arresting plaintiff and vouchering and safekeeping his property. They are both personally responsible for plaintiff's false arrest; denial of proper and timely medical treatment; denial of proper treatment at the precinct including but not limited to food, phone calls; loss or destruction of property at the precinct; defamation, libel and slander; the actions of all of the defendant officers described in this complaint, and all other claims set forth below.

14. On the evening of 17 March 2015, plaintiff was at a house party with family, numerous friends, and acquaintances in the vicinity of 117th Street and Madison Avenue, New York, NY. Among those present were a close friend named Melvin McLoyd; an acquaintance nicknamed "Stunna;" and a female "R" who was a close friend of Stunna.

15. Sometime after midnight, on 18 March 2015, a verbal altercation broke out between McLoyd and Stunna. R threatened to harm McLoyd if McLoyd hurt Stunna. Plaintiff attempted to calm them down and then Stunna punched plaintiff. An altercation ensued; several witnesses got involved and Stunna was escorted outside. When plaintiff left the party to go home, Stunna was outside waiting for him. Stunna confronted plaintiff, got in front of him

preventing him from walking away, and threatened him. As this was happening plaintiff observed R near the front of the building arguing with and yelling at McLoyd, screaming that plaintiff "needed to get touched" (meaning hurt) and needed to be hurt.

16. Stunna then threatened plaintiff again, and as plaintiff turned his attention to Stunna, R charged plaintiff from behind and stabbed plaintiff in the back.

17. As plaintiff turned his attention to R, R charged at him again with the knife. At the same time local police patrolling the area from the PSA6 precinct approached to investigate.

18. The police witnessed R charging at plaintiff with a knife, ordered everyone to stop moving, and observed R throw the knife to the ground. Police then arrested plaintiff and R, handcuffing them behind their backs.

19. Plaintiff informed the police that he had not committed any crimes, that he was a victim who had been stabbed by R; and the police observed that he was bleeding onto his clothing. Plaintiff requested his handcuffs be removed or loosened, and informed the police he was in pain and needed medical attention. The police ignored him.

20. Witnesses then alerted the police that McLoyd was lying still on the ground nearby and bleeding.

21. The police called for an ambulance, investigated, and spoke to the civilians at the scene.

22. Plaintiff along with the other civilians observed that McLoyd had been stabbed, was bleeding profusely, and was unconscious.

23. Plaintiff and numerous witnesses gave statements to the police that R had been holding a knife and fighting and arguing with McLoyd immediately before McLoyd fell and that R stabbed plaintiff in the back.

24. Before the ambulance arrived and instead of providing medical attention to plaintiff, the police placed him into a police vehicle still handcuffed without justification or cause despite the fact that plaintiff had not been treated at all for his stab wound and was bleeding the entire time, repeatedly requesting medical attention, and informing them he was in severe pain.

25. Instead of taking plaintiff to a hospital, the police took plaintiff to a local precinct and placed him in a holding cell, despite the fact that plaintiff had not been treated at all for his stab wound and was bleeding the entire time and requesting medical attention and informing them he was in pain.

26. At the precinct, Booker and Gambardelli officially placed plaintiff under arrest for the death of McLoyd and took his property, including his cell phone and case, his car and house keys, ID, an earring, and articles of his clothing.

27. When plaintiff repeated his request for medical attention, Booker and Gambardelli denied timely treatment and without justification or cause delayed processing his arrest. Instead they laughed and made jokes about plaintiff; ridiculing, humiliating him and insulting him while informing him that he was acting like some sort of a "big shot" for needing medical treatment. After the ambulance arrived they continued ridiculing plaintiff to the ambulance workers.

28. Eventually Booker and Gambardelli had plaintiff shackled hand and foot in metal cuffs and chains and instructed other officers to escort plaintiff to the hospital and to keep him shackled in the same manner until his return. Plaintiff was cuffed to the ambulance stretcher and taken to a local hospital.

29. Booker and Gambardelli also instructed the escorting police officers to confiscate plaintiff's shirt as evidence.

30. Plaintiff remained so shackled the entire time he was at the hospital during his treatment. When plaintiff asked for the shackles to be removed because they were preventing him from being properly and fully examined and treated, he was denied because Booker and Gambardelli had instructed that the shackles stay on until plaintiff was brought back to them.

31. Plaintiff's treatment lasted several hours and included but was not limited to stitches, x-rays, bandages, and medication via IV. The police confiscated plaintiff's shirt and prepared to take him back to the precinct naked to the waste. When plaintiff requested a shirt, he was denied. A hospital staff member who witnessed what was going on gave plaintiff a hospital shirt.

32. Sometime before noon on 18 March 2018 the police returned plaintiff to the precinct and Booker and Gambardelli questioned plaintiff. Plaintiff informed them that he wanted a lawyer and would not answer any questions. He pointed out that he was still in pain, and had just received medications and stitches for the stabbing.

33. Additionally plaintiff's mother was present at the precinct while plaintiff, Booker, and Gambardelli were there. She spoke with all of them and gave Booker a roll of quarters, a sandwich, and a Gatorade for plaintiff. Booker kept the roll of quarters and half of the sandwich and only gave plaintiff half a sandwich and the Gatorade. Booker also instructed plaintiff that he was not allowed to make any phone calls or have any additional food or water while he was at the precinct.

34. Without justification or cause Booker and Gambardelli continued questioning plaintiff and held him at the precinct until the morning of 19 March 2018. During his custody plaintiff was shackled for hours at a time despite the fact that he was inside the precinct.

35. Additionally plaintiff was escorted to and paraded through central bookings still shackled. When he made complaints about the shackles causing him pain he was ignored. Plaintiff remained in custody until the date the case was scheduled to be presented to a grand jury.

36. Within seven days of plaintiff's arrest, numerous witnesses including Stunna and R informed the police including Booker that plaintiff had nothing to do with McLoyd's death. On the grand jury date the case was not presented and plaintiff was released on his own recognizance and given a date to return to court.

37. Yet plaintiff remained falsely accused and made numerous court appearances until June 2016.

38. Due to the false arrest and slander of plaintiff by Booker and Gambardelli, plaintiff suffered libel and defamation in the media. News reports from the New York Post, New York Daily News, and CBS New York among others reported that plaintiff had stabbed and killed McLoyd and had been fighting about a noise complaint; had plunged a blade into McLoyd; had four prior arrests; and was responsible for murder and weapon possession. None of the media reports were true, and all of the media cited the police as their source.

39. On 9 June 2016 all charges against plaintiff were dismissed and the case was sealed. By that time the police including Booker and Gambardelli came forward with the exculpatory evidence they had had since plaintiff's false arrest, which fully exonerated him.

40. Regarding plaintiff's property that was vouchered by defendants, during the pendency of the case plaintiff and his mother asked Booker more than once to have it returned, including the roll of quarters. They also requested vouchers for the property. They were informed that neither property nor vouchers would be released until the case was over. After the case was dismissed, when plaintiff and his mother repeated their requests, Booker then informed them that they needed to provide her with vouchers for any property they wanted to retrieve. When they reminded Booker that she had refused to provide said vouchers citing that that the case needed to be dismissed first, she informed them that she could not help them and that she did not have any of the property.

41. Additionally, before the incident plaintiff had been fully employed. His employer terminated him due to the false arrest, and after the case was dismissed his former employer refused to take him back, for the reason that the false arrest still had the appearance of a valid arrest due to the news media coverage and the fact that there were no retractions, corrections, or updated media coverage stating that the case was over and the charges dismissed. Thus, defendants initially aggravated their false arrest of plaintiff by publicizing their false arrest to the media. Then defendants aggravated the false arrest by not setting the record straight. To date plaintiff has been unable to gain employment for these same reasons: an internet search of his name results in articles pertaining to his false arrest, and employers have informed him of such as the basis for denying him employment.

42. Defendants' false arrest of plaintiff has also resulted in plaintiff receiving threats from the family and friends of McLoyd that are so severe that plaintiff could not safely attend McLoyd's funeral and cannot to this date safely visit his family members who live in the same neighborhood as McLoyd. The news broke within two days of plaintiff's false arrest, and to date plaintiff remains in fear of being harmed.

### FIRST CAUSE OF ACTION
(FALSE ARREST AND ILLEGAL IMPRISONMENT)

43. Plaintiff repeats and realleges the foregoing paragraphs as though fully set forth herein.

44. Defendants subjected Plaintiff to false arrest, imprisonment, and deprivation of liberty without probable cause.

45. Defendants have deprived Plaintiff of civil, constitutional and statutory rights and have conspired to deprive plaintiff of such rights and are liable under 42 U.S.C. §§ 1983 and 1985 and the New York State Constitution.

46. As a result of the false arrest, imprisonment, and deprivation of liberty, plaintiff was damaged in the sum of One Million ($1,000,000.00) Dollars.

### SECOND CAUSE OF ACTION
(MUNICIPAL LIABILTY and NEGLIGENT HIRING, TRAINING and SUPERVISION)

47. Plaintiff repeats and realleges the foregoing paragraphs as though fully set forth herein.

48. Defendant CITY OF NEW YORK is liable for the damages suffered by the Plaintiff as a result of the conduct of its employees, agents, and servants.

49. Defendant CITY OF NEW YORK knew or should have known of their employees', agents', or servants' propensity to engage in the illegal and wrongful acts detailed above.

50. Upon information and belief, defendants and their supervisors have in the past falsely arrested individuals without probable cause, and made, and allowed other fellow police officers to make false entries in official police department records to cover up and hide their wrongful conduct.

51. Defendant CITY OF NEW YORK has failed to take steps necessary to discipline, train, supervise or otherwise correct the improper, illegal conduct of the individual defendants in this and in similar cases involving misconduct.

52. Defendant CITY OF NEW YORK has damaged Plaintiff by its failure to properly supervise, train, discipline, review, remove, or correct the illegal and improper acts of its employees, agents or servants in this and in similar cases involving police misconduct.

53. Defendants subjected Plaintiff to false arrest and false imprisonment, cruel and unusual punishment, unlawful conditions of confinement, negligence, denial of proper medical care, defamation, libel and slander, and all bad actions listed above.

54. Separate and apart from any bad acts, defendant CITY OF NEW YORK has damaged plaintiffs by its failure to adequately supervise and train its employees, agents or servants in the administration, supervision, and treatment of plaintiff's medical needs. Defendants knew or should have known how to provide medical aid for plaintiff, whether personally or by a standard procedure for ensuring that plaintiff received medical aid.

55. Plaintiff has been damaged as a result of the wrongful, negligent and illegal acts of defendant CITY OF NEW YORK in the amount of One Million ($1,000,000.00) Dollars.

**THIRD CAUSE OF ACTION**
(FOURTH AMENDMENT)

56. Plaintiff repeats and realleges the foregoing paragraphs as though fully set forth herein.

57. Defendants illegally arrested Plaintiff subjecting him to unlawful search and seizure, false arrest, imprisonment and deprivation of liberty, destruction of property, and desecration of remains, without probable cause.

58. As a result of the foregoing, Plaintiff has been deprived of the following rights, privileges and immunities secured by the Constitution and the laws of the United States: the right to be secure in person and effects against unreasonable search and seizure under the Fourth and Fourteenth Amendments; the rights not to be deprived of life, liberty or property without due process of law under the Fourth and Fourteenth Amendments; and the right to be free from a deprivation of civil rights in violation of the statutes made and provided.

59. Plaintiff has been damaged as a result of the wrongful, negligent and illegal acts of defendant CITY OF NEW YORK in the amount of One Million ($1,000,000.00) Dollars.

**FOURTH CAUSE OF ACTION**
(FOURTEENTH AMENDMENT)

60. Plaintiff repeats and realleges the foregoing paragraphs as though fully set forth herein.

61. Defendants illegally arrested Plaintiff, subjecting him to false arrest, imprisonment and deprivation of liberty without probable cause.

62. As a result of the foregoing, Plaintiff have been deprived of the following rights, privileges and immunities secured by the Constitution and the laws of the United States: the right to be secure in person and effects against unreasonable search and seizure under the Fourth and Fourteenth Amendments; Plaintiff' rights not to be deprived of life, liberty or property without due process of law under the Fourth and Fourteenth Amendments; and the right to be free from a deprivation of civil rights in violation of the statutes made and provided.

63. Plaintiff has been damaged as a result of the wrongful, negligent and illegal acts of the defendant CITY OF NEW YORK in the amount of One Million ($1,000,000.00) Dollars.

### FIFTH CAUSE OF ACTION
(DUE PROCESS VIOLATION)
(EXCESSIVE FORCE)

64. Plaintiff repeats and realleges the foregoing paragraphs as though fully set forth herein.

65. The Court has pendant jurisdiction of the portion of this claim falling under state law.

66. Defendants unnecessarily and wantonly inflicted pain on plaintiff maliciously or sadistically to cause harm. As outlined above, defendants, among other bad acts, falsely accused plaintiff , built up his fear and anxiety keeping him shackled at the precinct without cause or justification, delayed medical treatment for no reason other than to subject plaintiff to unnecessary pain and suffering, subjected plaintiff to illegal questioning after he invoked his right to remain silent and requested an attorney.

67. As a result of the foregoing, defendants intentionally put Plaintiff in fear and fright of imminent physical harm and plaintiff suffered pain unnecessarily.

68. Plaintiff has been damaged as a result of the wrongful, negligent and illegal acts of defendants in the amount of One Million ($1,000,000.00) Dollars.

### SIXTH CAUSE OF ACTION
(MALICIOUS PROSECUTION)

69. Plaintiff repeats and realleges the foregoing paragraphs as though fully set forth herein.

70. Defendants caused a false accusatory instrument to be filed against Plaintiff.

71. The criminal instrument was dismissed and the criminal proceedings favorably terminated.

72. Defendants have deprived Plaintiff of civil, constitutional and statutory rights and have conspired to deprive them of such rights and are liable under 42 U.S.C. §§ 1983 and 1985 and the New York State Constitution.

73. Plaintiff was damaged in the sum of One Million ($1,000,000.00) Dollars as a result of the malicious prosecution implemented by the defendants.

### SEVENTH CAUSE OF ACTION
(DUE PROCESS VIOLATION)
(CONDITIONS of CONFINEMENT/DELIBERATE INDIFFERENCE to MEDICAL NEEDS)

74. Plaintiff repeats and realleges the foregoing paragraphs as though fully set forth herein.

75. Plaintiff was denied food, water, and phone calls at the precinct.

76. Plaintiff suffered from the lack of food and water and defendants did not care about his welfare.

77. Defendants kept plaintiff shackled for hours while inside the precinct without justification or cause and forcibly handcuffed and shackled him too tightly, injuring him.

78. As a result of defendants' conduct, Plaintiff suffered injuries.

79. Upon information and belief, this is an ongoing practice within the confines of the precinct to deny food and water to individuals who are arrested.

80. Plaintiffs had serious medical needs and serious injuries and plaintiff was denied proper medical treatment at the scene of the unlawful arrest.

81. After the arrest, plaintiff continued to suffer pain and was denied proper medical treatment.

82. Additionally, defendants harassed plaintiff, and unnecessarily delayed his arrest process . They stole his phone and phone case, house and car keys, articles of clothing, IDs, money, and food.

83. Defendants were deliberately indifferent to plaintiff's serious medical needs as they knew of plaintiff's condition because he informed them and they saw proof when they observed that he was bleeding onto his clothes from a stab wound, but failed to take corrective actions to accommodate him.

84. As outlined above, they laughed and joked as they kept plaintiff locked up inside a room and watched him suffering. Anyone observing plaintiff as they did would easily recognize the need for medical attention. Defendants' denial and deliberate delaying of medical care caused plaintiff needless pain and created a risk of permanent physical injury or even death to plaintiff.

85. Plaintiff was denied due process, subjected to unconstitutional procedures at the precinct, as well as subjected to unconstitutional harassment and discrimination.

**EIGHTH CAUSE OF ACUTION**
(DENIAL of a FAIR TRIAL)

86. Plaintiff repeats and realleges the foregoing paragraphs as though fully set forth herein.

87. Defendants' misrepresentations about plaintiff to prosecutors deprived plaintiff of liberty because he was required to appear in court after the misrepresentations were made.

88. Thus defendants are liable to plaintiff under the Sixth Amendment for denying a fair trial.

89. As a result, plaintiff suffered the injuries as set forth within this complaint.

**NINTH CAUSE OF ACTION**
(CRUEL and UNUSUAL PUNISHMENT)

90. Plaintiff repeats and realleges the foregoing paragraphs as though fully set forth herein.

91. Plaintiff's physical condition suffered as a result of defendants' actions and conduct, and plaintiff unnecessarily suffered cruel and unusual punishment.

## TENTH CAUSE OF ACTION

(NEGLIGENCE)

92. Plaintiff repeats and realleges the foregoing paragraphs as though fully set forth herein.

93. Defendants' owed a duty to plaintiff who was a prisoner in the custody and care of defendants.

94. Defendants breached their duty to plaintiff.

95. As a result, plaintiff suffered injuries.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff demand judgment against the defendants, jointly and severally as follows:

A. In favor of Plaintiff in the amount of One Million ($1,000,000.00) Dollars each on each Cause of Action;

B. Awarding Plaintiff punitive damages in the amount of One Million ($1,000,000.00) Dollars each on each Cause of Action;

C. Awarding Plaintiff reasonable attorney's fees, costs and disbursements of this action;

D. Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury trial.

Dated: 16 MARCH 2017
New York, New York

_____/s/_____
Gregory Zenon, The Law Office of Gregory Zenon
30 Wall Street, 8th Floor
New York, New York 10005
212.380.8582
zenonlaw@yahoo.com
Attorney for Plaintiff